CHRIS J. SHERLOCK AND LENORA SHERLOCK, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77694. Filed June 20, 1960.

*Winston B. McCall, Esq.*, for the petitioners.
*James R. Harper, Jr., Esq.*, for the respondent.

PIERCE, *Judge:* The respondent determined a deficiency in the petitioners' income tax for the year 1954, and additions to tax, as follows:

| Deficiency | Additions to tax | |
|---|---|---|
| | Sec. 294(d)(1)(B) | Sec. 294 (d)(2) |
| $35,421.87 | $90 | $2,686.12 |

The issues for decision are:

(1) Where the principal petitioner, Chris J. Sherlock, sold his interest in a partnership prior to the end of the partnership's regular taxable year, is he taxable on his distributive share of the partnership income for the period ending with such sale?

(2) What was petitioner's basis for the interest in the partnership which he sold?

(3) Are petitioner and his wife liable for additions to tax under sections 294(d)(1)(B) and 294(d)(2) of the 1939 Code, for failure to make timely payment of installments of estimated tax, and for substantial underestimate of estimated tax?

### FINDINGS OF FACT.

Some of the facts have been stipulated. The stipulation of facts is incorporated herein by reference.

The petitioners, Chris J. Sherlock (hereinafter referred to as the petitioner) and Lenora Sherlock, are husband and wife, residing in Montgomery, Alabama. They filed a joint income tax return for the year 1954 with the district director of internal revenue at Birmingham, Alabama. Lenora Sherlock is a party herein solely because she joined in filing said joint return.

On June 1, 1951, the petitioner and two other individuals, Moreland Griffith Smith and Richard J. Adams, organized a partnership known as Sherlock, Smith and Adams, which thereafter engaged in architectural and engineering work and gave professional advice and opinions in connection therewith. Petitioner was the firm's engineer, while Smith and Adams were the architects.

The partnership agreement provided, among other things, that the profits and losses should be borne equally by the three partners; that any partner should have the right to withdraw from the firm upon prescribed notice; and that, in the case of any such withdrawal of a partner, the other partners should have an option either to discontinue the partnership business or to purchase the interest of the retiring partner. The partnership kept its books and records on the basis of a fiscal year ended April 30, and in accordance with an accrual method of accounting.

Under date of February 26, 1954, the petitioner sold his interest in the partnership, by bill of sale, to his two partners for an amount of $70,000. The bill of sale provided, so far as here material, as follows:

1. Seller [petitioner] sells and buyers buy seller's one-third ($\frac{1}{3}$) interest in the partnership of Sherlock, Smith and Adams of Montgomery, Alabama, for the price of Seventy Thousand ($70,000.00) Dollars, payable upon the following terms:

Twenty Thousand ($20,000.00) Dollars in cash, the balance to be paid, without interest, at the rate of One Thousand and Six Hundred and Sixty-Six and $66/100$ ($1,666.66) on the tenth (10) day of April, 1954, and on the tenth (10) day of each succeeding month until paid, solely from the future earnings and assets of the firm of Sherlock, Smith and Adams, * * *

* * * * * * *

3. The books of the firm will be closed as of February 28, 1954, and seller withdraws as member of the firm and buyers will prepare, as soon as possible thereafter, returns of the income reflecting the profit and loss of the partnership for the period beginning June 1, 1953, and ending February 28, 1954. The profit or loss for such period allocated equally between Chris J. Sherlock, Moreland Smith and Richard Adams; said returns shall be filed with the respective Governments and each of the parties will report their respective income from the partnership as shown by such returns. It is agreed that the profit and loss shown by such partnership to be the profit and loss of Sherlock has been received by him either through previous withdrawals or in the purchase price paid or to be paid by buyers.

Upon the sale of petitioner's interest, the partnership was dissolved, and pursuant to the above-quoted paragraph 3 of the bill

of sale, its books of account were closed as of February 28, 1954. Thereafter, the firm filed a partnership return of income for the period from May 1, 1953, to February 28, 1954. In this return, it was reported that the ordinary net income of the firm for said period was $249,827.38; that petitioner's distributive share thereof was $83,275.79; and that the amounts of his capital account in the partnership, as of the beginning and the end of said taxable period, were a debit balance (reflecting overdrafts) of $9,641.59 and a credit balance of $49,303.80, respectively.

The petitioner, on the joint income tax return filed by him and his wife for the year 1954, reported the entire amount of $70,000, described in the bill of sale as the sale price for his partnership interest, as long-term capital gain computed with respect to a zero basis; and he did not report any amount as his distributive share of the net income of the partnership for the period from May 1, 1953, to the date of the sale of his partnership interest. The respondent, in his notice of deficiency, determined that petitioner should have included in his ordinary income for the year 1954 a distributive share of the partnership's net income for the period ending with the sale of his interest, in the amount of $83,275.79; and that the amount of the capital gain which he had reported in his return for said year should be reduced.

At the time of the trial herein, the parties stipulated that the correct amount of the ordinary income of the partnership for its fiscal period beginning May 1, 1953, and ending February 28, 1954, was $147,827.38; that the drawings of petitioner from said partnership during said period were $14,233.97; and that petitioner's capital account as of the beginning of said period was overdrawn (carrying a debit balance) in the amount of $9,641.59.

Petitioner and his wife filed two declarations of estimated tax for the year 1954. The first, which was dated January 14, 1954, was actually filed with the district director of internal revenue on March 15, 1954; it declared estimated income tax for 1954 in the amount of $3,000, indicated that $600 thereof would be withheld from income during the year, and that the balance of estimated tax to be paid was $2,400. The second declaration was identical with the first, except that it was dated March 15, 1954, and that it was filed with the district director on March 22, 1954. The petitioner made a payment of $600 in connection with each of these two declarations, or a total of $1,200. And he made no subsequent or additional payments of estimated tax for said year. Each of the declarations indicated that the amount of petitioners' income tax for the prior year 1953 was $2,724.

The respondent, in his notice of deficiency, determined that petitioners were liable for additions to tax under sections 294(d)(1)

(B) and 294(d)(2) of the 1939 Code, for failure to make timely payment of installments of estimated tax, and for substantial underestimate of estimated tax.

OPINION.

1. The first issue is whether petitioner must include in his gross income for the year 1954 his distributive share of the partnership net income for its fiscal period which ended February 28, 1954—at which time the partnership was dissolved following petitioner's sale of his interest therein. Petitioner contends that he is not taxable on such distributive share for the reason that he sold his entire partnership interest which included his right to any income for said period; and also because he never received any of such distributive share. We think that such contentions are without merit.

Section 182(c) of the 1939 Code, which was effective throughout the partnership's fiscal period here involved, provides:

SEC. 182. TAX ON PARTNERS.

In computing the net income of each partner, he shall include, whether or not distribution is made to him—

 *   *    *    *    *    *    *

(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, * * *

The foregoing provisions of the statute are specific and free from ambiguity. The distributive share of each partner mentioned in said statute is to be determined in accordance with the provisions of the partnership agreement. *Frederick S. Klein*, 25 T. C. 1045, 1051. It has been stipulated in the instant case that the amount of the partnership net income for the period ending with its dissolution was $147,827.38; and the other evidence establishes that petitioner had a one-third interest therein, so that the amount of his distributive share for said period was $49,275.79. As shown in the above statute, he was chargeable with the amount of such distributive share "whether or not distribution [was] made to him."

This Court has held that where a partner sells his partnership interest, he must include in his income his distributive share of the partnership net income to the date of such sale; and that the sale does not effect a transmutation of such ordinary income into capital with respect to which capital gain or loss may be computed.

In *Louis Karsch*, 8 T. C. 1327, we said:

We have been referred to no authority indicating that the mere sale of a partnership interest converts a partner's distributive share in past earnings upon which no tax has been paid into a capital item or relieves him from the necessity of paying a tax thereon as ordinary income. The rule in fact appears to be to the contrary. "Except for the 'purchase' and release, all his collections would have been income; the remaining partners would merely have

turned over to him his existing interest in earnings already made * * * The 'purchase' of that future income did not turn it into capital, any more than the discount of a note received in consideration of personal services." *Helvering* v. *Smith* (C.C.A. 2d Cir.), 90 Fed. (2d) 590, 592; see *Bull* v. *United States*, 295 U.S. 247, 256.[1] And it scarcely requires the citation of authority to demonstrate the commonly applicable principle that no anticipatory assignment of income already earned can relieve the assignor of tax thereon. E.g., *Helvering* v. *Eubank*, 311 U.S. 122. We think it must be concluded that petitioner was taxable on his share of the income actually earned by the partnership to the date of his withdrawal, not as capital gain, but as a part of his ordinary income. [Footnote omitted.]

To the same effect are: *LeSage* v. *Commissioner*, 173 F. 2d 826 (C.A. 5), modifying a Memorandum Opinion of this Court; *Leff* v. *Commissioner*, 235 F. 2d 439 (C.A. 2), affirming a Memorandum Opinion of this Court; *Tunnell* v. *United States*, 259 F. 2d 916 (C.A. 3); *Doyle* v. *Commissioner*, 102 F. 2d 86 (C.A. 4), affirming 37 B. T. A. 323; *United States* v. *Snow*, 233 F. 2d 103 (C.A. 9), certiorari denied 350 U.S. 831; *Estate of William Goldstein*, 29 T. C. 931; *B. Howard Spicker*, 26 T. C. 91; and *George F. Johnson*, 21 T. C. 733. Decisions by two Courts of Appeals appear to adopt a contrary view, *Meyer* v. *United States*, 213 F. 2d 278 (C.A. 7); and *United States* v. *Donoho*, 275 F. 2d 489 (C.A. 8); but in view of the authorities cited above from five other circuits, which in our opinion are in accord with the express provisions of the statute, we continue to adhere to the position which we have heretofore taken and consistently maintained.

We hold that there should be included in petitioner's income for the year involved, his distributive share of the net income of the partnership for its fiscal period ending February 28, 1954. The amount of such distributive share is $49,275.79.

2. The next issue pertains to petitioner's basis for the partnership interest which he sold. Regulations 118, section 39.113(a)(13)–2, provide in this regard, as follows:

Sec. 39.113(a)(13)–2. *Readjustment of partnership interests.* (a) When a partner retires from a partnership, or the partnership is dissolved, the partner realizes a gain or loss measured by the difference between the price received for his interest and the sum of the adjusted cost or other basis to him of his interest in the partnership plus the amount of his share in any undistributed partnership net income earned since he became a partner on which the income tax has been paid. * * *

The respondent computed the petitioner's adjusted basis for his capital interest in the partnership, as follows:

| | |
|---|---|
| Petitioner's distributive share of partnership income for the taxable period ended Feb. 28, 1954 | $49,275.79 |
| Long-term capital gain of partnership | 88.90 |
| Total | 49,364.69 |

Less:

| Deficit balance in capital account at May 1, 1953 | $9,641.59 | |
| Withdrawals | 14,233.97 | |
| Contributions | 185.33 | 24,060.89 |

Adjusted basis of petitioner's partnership interest _____ 25,303.80

We approve the respondent's determination as to this issue. Although income tax has not yet been paid on the amount of $49,275.79 which the respondent set forth in the first item of his above computation, we have, under the first issue, determined that tax thereon is due; and such tax will be paid as part of the deficiency in this case. In such circumstances we think that the respondent accorded proper treatment to such item.

3. The remaining issues pertain to the additions to tax.

For the year here involved, petitioner and his wife filed two declarations of estimated tax on each of which they estimated the amount of their income tax for 1954 to be $3,000; estimated the amount of income tax to be withheld during the year to be $600; and estimated the balance of such tax to be $2,400. This latter amount was due to be paid in four installments of $600 each. They actually paid two of these installments, totaling $1,200, but failed to pay the remainder. The evidence does not establish any reason for the failure to pay the last two installments. On the basis of the foregoing, we hold that an addition to tax under section 294(d)(1)(B) should be imposed.

The other addition to tax was imposed by the respondent for substantial underestimate of estimated tax. There can be no question that when the amount of petitioner's distributive share of the partnership income is included in income, that the $3,000 estimate of tax made by the petitioners is grossly inadequate. Section 294(d)(2) contains provisions which relieve the taxpayer of liability for addition to tax for substantial underestimate of estimated tax (1) where the amount of the estimate of the taxpayer's income tax is at least equal to the tax of the preceding year, and (2) where he has thereafter made timely payment of all the installments of such estimated tax. While petitioners' estimate of their 1954 income tax does appear to have been in an amount slightly greater than their tax liability for the preceding year 1953, they are nevertheless not entitled to the benefits of such relief provisions, because they did not make timely payment of all installments of estimated tax. Petitioners' contention that the concurrent imposition of the additions to tax under sections 294(d)(1)(B) and 294(d)(2) are barred by the decision of the Supreme Court in *Commissioner* v. *Acker*, 361 U.S. 87, must be rejected. Cf. *Rose S. Harkins*, 33 T.C. 365, 366. We hold that an addition to tax under section 294(d)(2) should be imposed in this case.

*Decision will be entered under Rule 50.*